Good morning, Your Honors. May it please the Court. My name is Anna Benvenu. I represent Petitioner Jaswinder Singh this morning. Today, the Court's reviewing two agency decisions, both of which unlawfully shifted the burden of proof to Petitioner to show that he could safely and reasonably relocate, rather than applying the regulatory presumption that, in fact, because he suffered past persecution, he automatically was presumed to have a fear of — a well-founded fear of future persecution on account of his political opinion and based on the original claim. So are we talking about reasonableness? Well, yes, Your Honor. We're also talking about safety of relocation. So both issues are ones where the government bears the burden. Does the Dalit class issue only go to reasonableness? No. I think it absolutely goes to safety as well, although the presumption that he's entitled to is that he will, again, in a new location in India, be politically active for his political party and his political beliefs, not on account of his Dalit status, because that's not a basis of past persecution. The basis of past persecution is his political activity. And he was arrested and tortured by the police. He was also persecuted by private actors. And that's the same thing that is presumed will happen wherever he goes. So the safety — his safety as a political activist in a new place, he — this court must assume, as the courts below should have, that he would, again, be politically active. However, we've got lots of cases that have the same kind of stuff as it relates to the safety of relocation. And we have, in those cases, said every time, the officers are unlikely to look for persons outside of Punjab and therefore not a problem. I agree. And I think — Why is this case any different? Well, it's not actually different. It's just that that's one part of the inquiry. Well, I understand. But I'm just trying to get through safety, because that's where you want to go first. I'm going to go to reasonableness if you want to go there. Sure. We'll talk safety first. So the officer — whether the Punjabi police will pursue him is certainly a question. But if they won't, and just assume for the sake of argument here for a minute that they won't, that's not where the inquiry ends. And I think it's — this Court has, on many occasions, held, say, in a case of religious persecution, if I'm a Christian and I am persecuted on account of being a Christian and I move to a new place, the question isn't whether — only whether officers are going to hunt me down for being a Christian. They're going to go 7,000 miles to my new location. The question is also whether — and the presumption that I'm entitled to is that I will also suffer persecution as a Christian person in the new place. And what was the overwhelming evidence that he would be persecuted in other parts of India for this political activism? Well, he's entitled to a presumption that he will be. So the question is, what is the evidence that he won't be? And that's what the government must come forward with, is evidence that overcomes that presumption. And you're saying there's no substantial evidence in this record? That — that in the new place, that when he is again politically active, that local police in that new place won't act the same way as they did before. That's the presumption to which he's entitled. I understand your argument. I'm not sure. I mean, I've — so it's really a matter of us just looking at the evidence that's in the record and see if it is substantial or not? It is, except that in this case, there are like six or seven things that show you that the immigration judge and the board misallocated the burden. So rather than looking at — Well, I don't think they had a burden problem as it relates to the safety. You might be saying what you want to say about reasonableness, but I guess you'd have to point in the record where they did that on safety. Happy to. It comes up in a couple of places. If you could jump to the Dalit class thing, reasonableness, I think you might be on stronger ground when you talk about that. Yeah. It's both. And it's the government's burden on both things. So with regard to the Dalit, the board itself expressly said that Mr. Singh did not specifically raise facts to support a claim of inability to relocate on the basis of being a Dalit. That shows you that the board saw it as his job to raise a claim. The board cited this court's — Now, just a minute. They didn't say anything about raise the claim necessarily, but they really were saying — and I'm reading now for what they said — it was reasonable for the IJA to not specifically consider the respondent's alleged Dalit class affiliation because they respondent himself explicitly only mentioned that his inability to relocate was based on the fear of being tracked by the police. They didn't say anything about Dalit. They went on — the board then went on to say, quote, he did not specifically raise facts to support a claim of inability to relocate. And then, Your Honor, they cite — Let's think about that. Supposing that your client had a health problem and that he couldn't relocate because of the health problem. If your client didn't actually put the health problem in the record, would the government have to do something about that? Would the government have to respond? No, but this case is different because he did put the fact of his Dalit status in the record. Well, is the fact of the Dalit status enough to suggest that there's a difference then? I mean, would the Dalit be treated differently in any other part of India than they would in the part where he was? Well, so there's his testimony that he was a Dalit. That's it. And there's evidence in the record about how Dalits are treated. And the board itself said he didn't raise the claim. They cite this court's case in Aguilar v. Gonzalez. I — Aguilar is a past persecution case where a respondent in that case or a petitioner in that case bore the burden of showing past persecution. So the board is clearly saying he needed to raise his Dalit status as a claim. But it's the government's burden to prove safety. Well, I guess — So since the record — Now, just a minute. All I'm trying to do — you can go to the end of your argument if you want to, but let's concentrate on what I'm trying to get at here. I don't know that this can show that they shifted the burden, only that he did not raise the fact enough to make it happen. I mean, he says — and I'm trying to give him every credit — a fear of being tracked by the police. Sure. He doesn't say anything about Dalit. Right. But it's the — judge has to — Own testimony doesn't say that it's a fear of being a Dalit. Right. But he is a Dalit. And the judge has to — They understood he was a Dalit. Right. But he never said anything about it. So the regulation requires the judge to consider a bunch of factors, including his social status. And there's evidence in the record that shows that Dalits suffer throughout India. And so the combination of those two things means that the judge's failure to consider that is because it misallocated the burden. It didn't — it didn't — instead of requiring Mr. Singh — instead of requiring the government to prove why Dalits can safely and reasonably relocate, it required Mr. Singh to affirmatively come forth with evidence about his status as a Dalit and what that means. But that's the burden he's entitled to, the presumption he's entitled to. If, in fact, I don't agree with you — Yes. — that that's what they did, that all they were saying is all that they have to respond to are the facts that he brings up in what he says, then where are you on this issue? That he brought up the fact that he was a Dalit and he did all he needed to do, given the government's burden. He did not bring up the fact he was a Dalit in response to these questions. But in his — They knew he was a Dalit. In his testimony, he talked about how he had had an affair with a Dalit woman and that he had suffered as a — as a result of that. And so — I thought she was not Dalit, and that was the problem. I'm sorry. Thank you. That's the problem. Sorry. I apologize. I was going to say — Yeah. So that he had an inter-caste affair and that, as a result, he suffered. So the fact was raised. It wasn't like a secret illness. It wasn't a secret inter-caste that we're, like, later bringing up. That would be a different scenario. Might I reserve the rest of my time, Your Honor? Sure. Thank you so much. I'm surprised you didn't say anything about the humanitarians. I'll be right back. Well, I would hope that he would have given him a chance to respond to your argument. I have so little time. May it please the Court, Victor Lawrence on behalf of the Attorney General. Your Honor, substantial evidence supports the agency's denial of Petitioner's applications for asylum and withholding on relocation grounds. This issue of the Dalit caste that the Court was querying about is one that was barely raised to the government in the first place and wasn't raised with any idea that the government was — that the Petitioner was suggesting that he was going to have trouble relocating as a result of his Dalit class. Is it part of the reason that the burden is on the government to show reasonableness of relocation that someone in the situation of having been persecuted in one place and only having lived in that one place might not really know? I mean, how is he supposed to know whether he can relocate to some other part of India? It's — part of the idea is it's the government's burden, if they're going to overcome the presumption, to show that he can. And he'd put in the evidence that he's Dalit, so why isn't it the government's burden to deal with that as part of their overcoming the presumption? Because there's absolutely — excuse me — there's absolutely no argument to suggest that his Dalit caste was going to be something that was going to cause an impediment to him if he were to relocate. But there is evidence in the record that it might be. There — there's evidence in the record of a lot of things, the fact that he was a potter, the fact that he was a — had computer science skills. But none — but this issue with the Dalit class was never one that was suggested to be one that was going to cause an impediment with his relocation. Well, but doesn't — I'm sorry. It's not his burden, but — Doesn't the government have to take him as he is, with his social status, any known health consequences, all of it, and prove that he could reasonably relocate? And one of those essential components of him is what caste system he's in. Well, actually, the critical burden on the government is to show that there was some sort of individualized analysis with respect to relocation in comparison with the record evidence. And that is what the government did here. The government looked at his individual characteristics, the fact that he was young, able-bodied, the fact that he had pottery skills, the fact that he had computer skills, the fact that he spoke Punjabi, the fact that he spoke some English, the fact that there were Sikhs in very — in places all over India, Sikh communities all over India. So it looked at his individual characteristics. It also looked at the record evidence, which showed that Sikhs have no problem outside of the Punjab. And my opponent really pointed to no evidence that there would be some national effort to find a low-level Sikh of his. But that doesn't — you haven't said anything about the Dalit class issue. So if the government has the burden to overcome the presumption, then how did it meet its burden on the Dalit class issue? When something is not raised except tangentially, such as the Dalit class, the government cannot presume that years later that this is going to be the focus of the court's inquiry. Well, how did the government take him as he is with his social class and everything else? How did it take — I don't hear any response to the question about how it accounted for all of the factors of who this person was in meeting its burden. Well, again, I think it did an individualized analysis by looking at what this — who this person was. And that includes — you know, they may not have mentioned the fact that he was of the Dalit class, but they knew that he was a Sikh who was going to be in an area outside of the Punjab. Let's say he was a single woman. Just change the circumstances. Would the government have to consider whether a single woman could relocate to a particular part of India? Would the fact that it was a single woman be something that the government had to consider without the petitioner saying, single women can't live in that part of India? Your Honor, I kind of resist the hypothetical. I mean, I would have to know all the factors. Well, I'm just trying to figure out an essential part of a person that the government does not have to consider in its analysis unless the petitioner waves his hand and says, hey, what about this part of me? Right. I guess to answer your question is that could be a factor that the government could consider, or it may not be. There's a wealth of other evidence that shows it in an individualized analysis and found for various reasons that safety would not be a problem in his relocation. But how do you prove it? I mean, how do you prove the reasonableness of the relocation if you don't discuss all the circumstances? And I think we have to look at the basis the agency gave. The basis the agency gave is not that being Dalit is not a problem. The basis they gave is he waved it. But how can he wave it when it's the government's burden? Well, he waved the issue with the Dalit caste by not bringing this up before the immigration judge. Doesn't that put the burden on him to make arguments that really are the government's burden to be making? No, because it wasn't until post all this briefing that we realize now, or at least it before the board, that the petitioner is setting forth this defense to relocation, the fact that he's a member of the Dalit class. But he knew at the time, and he was represented by counsel before the immigration judge, and his counsel at that time knew what the law of relocation was. And if he thought that this was an important defense to indicate that he was a member of the Dalit caste, certainly he would have raised that in the questioning of his witness. But instead, all the witness talked about was his fear of the tenant registration drives. He didn't say anything about the fact that, well, because I'm a Dalit, I'm concerned about going to any other area. But he did say that the low caste created problems with regard to a relationship with a female, right? Yes, he did. But that's a far cry from being persecuted. We're talking about whether he has a well-founded fear in other areas of India outside of the Punjab. The fact that he had this run-in with somebody in a different caste, and I say run-in, a relationship with an individual in a different caste, and was warned about it, or whatever you want to say, the consequences, there's no indication that that's going to happen to him outside. Remember, outside of the Punjab. Remember, the key indication is, he did have a past persecution in the Punjab, or at least the judge found that it wasn't going to ding him for credibility. So we assume that's the case. But does he have a well-founded fear outside of Punjab? Well, the problem, I guess, comes, and this is where, in my book, it's kind of a tipping question. There's no question that when being asked about whether he could relocate, he doesn't say anything about being Dali. Correct. No question. There's no question that he only says that there's a fear of being tracked by the police. And there's only other one testimony in the record at all that says that his low caste creates a problem. And that's with the lady. Right. So, I mean, it seems to me that what your opposition is trying to say is, simply because the government knew he was Dali, and he didn't say that that was a problem with being relocated, the government nonetheless has a duty to suggest that Dali is a problem because they knew he was one, and deal with that situation. What's your response to that? My response is that's not fair to put that overwhelming burden on the government to predict that this is going to be an argument that it had to deal with in the board's opinion when the guy didn't even raise it except for the fact of the relationship that he was in. Do you have a case that supports that? I do not have a case except to say that, look, I think it would be a far reach to say that the government didn't meet its burden of doing an individualized analysis with the record evidence with everything it did by looking at the individual circumstances of this individual. Just because it left out one issue with respect to his Dali class, there's no indication that that's going to be any more of a problem for him than anybody else in India that's a member of the Dali class. So why should the government have the burden of discussing that specifically when there are perhaps millions of people in the Dali class in India generally? So there is no reason why the government should deal with that issue when it's an issue common to every member of society, not just Mr. Singh. I mean, if all those people who are Dali are really suffering, then that would be relevant, wouldn't it? And there is record evidence that that's maybe the case. I mean, just because there are a lot of them doesn't mean they're in a good situation. Right. But does that mean that every individual of the Dali class is welcome to get asylum? Well, no, but he proved past persecution. He did. He proved, and I don't want to go too far, but he proved past persecution with respect to his dealings in the Punjab region. And we're talking about not relocating him to the Punjab. We're talking about relocating him to any other part of India where there are Sikh communities all over the place who practice their religion and practice their, or are the political party SADM. And there's no record evidence that any of them. Can I ask you about humanitarian asylum before you run out of time? Yes. What do you think the agency, or what was the meaning of the citation to the country reports in the analysis of the humanitarian asylum? What was that being used for? I'm sorry, can you tell me exactly where? The, I think that the IJ referenced the country reports in denying the humanitarian asylum claim. And I'm wondering what your understanding is of the reason for citing the country reports, what they were being used to show. I don't know. I don't know the answer to that. But we do think that the immigration judge did not abuse his discretion in determining that he was not going to grant him humanitarian asylum. I guess the worry I have is that in general, maybe one would say that. But if the IJ applied an incorrect standard to 1202.13B13A, then there is an abuse of discretion. Well, we don't think he applied an incorrect standard. Well, maybe he did if you're not supposed to consider ability to relocate. And maybe that's what he meant by the country conditions. I mean, it's unclear what he thought he was relying on or what the legal reasoning was that he was using to deny this claim. It's possible it was incorrect legal reasoning. Well, what I would say is the fact that he cited the country reports, I don't know what was behind the immigration judge's analysis when he cited the country reports or what his. There's other places he cited it for the ability to relocate, but it's not. Do you think that ability to relocate is a proper consideration for humanitarian asylum? Not necessarily. But again, I don't think that's what the immigration judge was going for here. He was looking at the record evidence and determining that on the record as a whole, doing an individualized analysis of what this petitioner offered that humanitarian asylum was not something that he would grant. And I think it's there's nothing to say that it was arbitrary, irrational or contrary to law. And therefore, we would ask that the court deny this petition for review. OK, thank you. I'm going to pick up right where we just were on humanitarian relief. Is it your position that there was nothing in the country in the country report that the IJ could properly have considered on humanitarian relief? Yes, Your Honor. That is my position, that the country conditions are totally inappropriate for that part of the analysis, that the regulation only asks that you look at his harm and whether he suffered a specific severe type of persecution that would warrant it, even in the absence of a well-founded fear. That's exactly what it says. Forget the well-founded fear. Forget if it's been rebutted. Even assuming it's been rebutted, has he suffered such that you shouldn't compel him to return? I think it's very clear that a remand is required here on humanitarian based on both the immigration judge's misapplication of the regulation and law and then the board's sanctioning of that without any explanation of why they were sanctioning it. Because one cannot allow the consideration of country conditions in considering the severity of the past persecution. Exactly. That's the whole point of humanitarian asylum itself, Your Honor. Going back one minute to this burden of proof issue, because I just think it's the judge's freedom. Let me just ask, if we agree with you on humanitarian asylum and we need to remand because of that, is there any reason to discuss anything else? Yeah, because only because in this case, if he isn't granted humanitarian asylum for whatever reason, then he's done. And in this case, it was so the burden was so improperly shifted to him that this court must remand on the other issue. You asked my opponent about a case for the proposition about regarding burden of proof. And A-F-R-I-Y-I-E, a free holder at 613 F3rd 924, nothing in our case law required a free to introduce evidence regarding relocation, given the presumption of past persecution. If the government's evidence fails to rebut the presumption that relocation is unreasonable, presumption must stand. Well, but the thing that I thought A-F-R-I-Y-I-E said, and maybe you can correct me or I need to go read it, it seemed to me that the case in A-F-R-I-Y-I-E said, where the panel cannot determine from the record whether the BIA improperly shifted the burden or whether the BIA considered the factors set forth in there, then there would be no reason to remand. Right, and the proposition I'm citing it for is the proposition that he wasn't required to introduce anything and he wasn't here as well. Well, I guess I'm having a tough time because it seems to me that's what a free says. You at least got to say what my problem is. And he did that. That he did. Well, he didn't say anything about, when we came, I mean, there's nothing in this record to suggest that when we came to the decision of why you can't relocate, he said nothing about being a Dali. But asking him to make an argument, asking him to come forward. He just had to give some facts. Why can't you do it? Why does he have to do that? All you have to do is say why. But why? Because that's the whole thing. If you don't have the facts. If he's going to sit there and he's, supposing he was, as I said, supposing he had a health problem and he didn't say anything about it. But that's a secret one, Your Honor. Here, what is the- So the fact that it was, so the fact that everybody knew he was Dali, that means even though he doesn't think that's a problem in relocating because he doesn't bring it up, the government's got to nonetheless address it? Yes, because what is the meaning of the burden of proof otherwise? What case says that? Well, the burden of proof on the government. No, I'm talking about, we know what the burden of proof cases are, but what case is there that suggests the government has to address something that's in the record that the petitioner is not even suggesting is a problem in relocating? The, even a free, he says nothing's required, nothing in our case law requires him to introduce evidence. Okay, thank you. Thank you, Your Honor. Case 1573696 is submitted. We'll move to case 1617005, Ellis versus J.P. Morgan.
judges: N.R. Smith, Friedland, Lynn